UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KHALID McBETH and CARMINE CASCONE,
individually and on behalf of all other persons
similarly situated who were employed by
GABRIELLI TRUCK SALES, LTD.;
GABRIELLI TRUCK SALES OF
CONNECTICUT, LLC, GABRIELLI TRUCK
SERVICE, INC. and GABRIELLI FORD
TRUCK SALES AND SERVICE, INC.; and/or
any other entities affiliated with or controlled
by GABRIELLI TRUCK SALES, LTD.;
GABRIELLI TRUCK SALES OF
CONNECTICUT, LLC  GABRIELLI TRUCK
SERVICE, INC. and GABRIELLI FORD
TRUCK SALES AND SERVICE, INC.;
ARMANDO GABRIELLI, and/or AMEDEO
GABRIELLI,

                                    Plaintiffs,

              -against-

GABRIELLI TRUCK SALES, LTD.;
GABRIELLI TRUCK SALES OF
CONNECTICUT, LLC, GABRIELLI TRUCK
SERVICE, INC. and GABRIELLI FORD
TRUCK SALES AND SERVICE, INC.; and/or
any other entities affiliated with or controlled
by GABRIELLI TRUCK SALES, LTD.;
GABRIELLI TRUCK SALES OF
CONNECTICUT, LLC  GABRIELLI TRUCK
SERVICE, INC. and GABRIELLI FORD
TRUCK SALES AND SERVICE, INC.;
ARMANDO GABRIELLI, and/or AMEDEO
GABRIELLI,

                                 Defendants.

-------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 09-4112

(Wexler, J.)

1

BACKGROUND

I.      The Parties, The Defendant Dealership and the Allegations of the Complaint

Plaintiffs McBeth and Cascone are former employees of Defendants.  Although the

complaint names as Defendants several related corporations along with two individuals, in the

context of this motion the court refers to Defendants collectively as "Defendants" or "Gabrielli."

Gabrielli was, at relevant times, engaged in the operation of dealerships that sell and service

trucks.  The Gabrielli dealership where McBeth and Cascone were employed (the "Medford

Dealership") sells and services trucks, and maintains an on-site parts department.  The parts

department located within the Medford Dealership contains an inventory of thousands of parts,

and those employed to work in that department are responsible, inter alia, for locating, retrieving

and delivery of specific parts.  The parts department consists of a warehouse where parts are

stored, a back counter, and a front counter.  The back counter supplies parts requested by

Gabrielli mechanics working on customer vehicles in the dealership's service department. The

front counter supplies parts directly to outside consumers.

Plaintiff McBeth was employed by Gabrielli at the Medford Dealership from March of

2000 to April of 2008.  Plaintiff Cascone was employed at the same location from March of

2003 until March of 2007.  The court details below Plaintiffs' duties, as they are important to

determining the issue of whether or not Gabrielli is entitled to the exemptions claimed.  The

court notes that the parties are generally in agreement as to the facts regarding the Plaintiffs'

duties. Plaintiffs' objections to the factual statement submitted by Defendants appears to focus

on the objection to Defendant's continued reference to Plaintiffs' titles as "partsmen," a label

with which they do not agree.  The court does not rely on any title in making its decision on this

3

motion, but instead focuses on the duties performed.

    A.    <u>McBeth</u>

McBeth began his employment with Gabrielli at the Medford Dealership in March of 2000. From his date of hire until 2007, McBeth worked at the back parts counter. At this position, McBeth interacted with Gabrielli mechanics working on trucks in the dealership's service department. Generally speaking, mechanics working on trucks would request parts from the back service counter. McBeth would identify, locate and make those parts available for the mechanics. If a part requested was not available on site, McBeth would locate the part, and order it for delivery to the Medford Dealership. In 2007, McBeth transferred to the front parts counter. While this position also involved identifying and locating parts, the front counter serviced outside consumers, and not on site mechanics. McBeth sought transfer to the front parts counter partially because the front area was climate controlled, and partially because customers would often tip McBeth when he assisted them in getting parts to their vehicles. In addition to his compensation and occasional tips, McBeth received a variable amount of additional pay based upon dealership sales. McBeth refers to this additional pay as "incentive" pay, and Defendants refer to the pay as commission. McBeth resigned from his position with Gabrielli in April of 2008. The court makes no findings with respect to the reasons that McBeth left Gabrielli, as they are not relevant to the merits of this motion.

    B.    <u>Cascone</u>

Plaintiff Cascone was employed at the Medford Dealership from March of 2003, until March of 2007. Initially, Cascone worked as a driver for Gabrielli. As a driver, Cascone delivered parts for Gabrielli. While working as a driver, Cascone drove trucks with a gross

4

vehicle weight of over 10,000 pounds. After working as a Gabrielli driver for approximately two years, Cascone began working in the Gabrielli parts department. In this position, Cascone was responsible for locating parts to satisfy customer orders. Cascone would either deliver parts to the in-house counter person, or directly to consumers. Cascone's duties also involved packing parts for shipment pursuant to specific orders. Cascone loaded parts too heavy to lift by using a pallet jack or a forklift. While employed in the Gabrielli parts department Cascone, unlike McBeth, did not have the responsibility of identifying parts. Instead, Cascone retrieved and delivered previously identified parts. He either delivered those parts to on site individuals, or packed them for shipment to off site locations. After becoming employed in the parts department, Cascone occasionally filled in for sick or absent Gabrielli drivers.

II.    The Motion

As noted, Defendants move for summary judgment on the ground that they are entitled to two separate statutory exemptions from the FLSA. First, Defendants argue that they are entitled to the exemption provided for in 29 U.S.C. §213(b)(10)(a), which uses the term "partsmen," in the language of the exemption. Second, Defendants claim entitlement to the "motor carrier," exemption, provided for in 29 U.S.C. §213(b)(1). This provisions of the FLSA generally, sets forth an exemption applicable to employees with respect to whom the Secretary of Transportation has the power of regulation. Plaintiffs argue that neither statutory exemption applies here.

The parties agree that the facts established during discovery allow this court to rule on the issue raised as a matter of law. After outlining applicable law, and upon consideration of the facts set forth above in light of that law, the court will decide the merits of the motion.

5

DISCUSSION

I     <u>General Principles</u>

The FLSA overtime provision requires that those who work more than forty hours per week be compensated at the rate of one and one-half times the minimum wage. 29 U.S.C. § 207(a)(1); <u>Howard v. Port Authority of New York, New Jersey</u>, 684 F. Supp.2d 409, 412 (S.D.N.Y. 2010). The FLSA contains several express statutory exemptions from the overtime payment requirement. These exemptions are incorporated into New York State's parallel overtime provision. <u>See</u> 12 N.Y.C.R.R. § 142-3.2. The burden of proving that an exemption applies is on the employer, and in view of the fact that the FLSA is remedial in nature, its statutory exemptions are to be narrowly construed. <u>Reiseck v. Universal Communications of Miami, Inc.</u>, 591 F.3d 101, 104 (2d Cir. 2010); <u>Bilyou v. Dutchess Beer Distributors, Inc.</u>, 300 F.3d 217, 222 (2d Cir. 2002); <u>see</u> <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392 (1960) (employers seeking to assert exemption must show that exemption claimed applied "plainly and unmistakably").

Deciding whether an exemption applies requires the court to consider both questions of fact and law. The question of how an employee spends his time is factual, while the issue of whether such activities render the employee exempt from the FLSA's overtime provision is a question of law. <u>Icicle Seafoods, Inc. v. Worthington</u>, 475 U.S. 709, 714 (1986); <u>Clarke v. JPMorgan Chase Bank, N.A.</u>, 2010 WL 1379778 *15 (S.D.N.Y. 2010). An employees' exempt status depends less on his title, and more on the actual duties performed. <u>Cooke v. General Dynamics Corp.</u> 993 F. Supp. 56, 61 (D. Conn. 1997).

II.   Partsmen Exemption

29 U.S.C. §213(b)(10)(A) exempts, in pertinent part, from the FLSA overtime payment requirement, "any salesman, partsman, or mechanic primarily engaged in selling or servicing . . . trucks . . . if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." 29 U.S.C. §213(b)(10)(A).  While Defendants interpret the statute otherwise, the court reads the plain language of the statute to have three requirements:

- that the employee be either a salesman, partsman, or mechanic;

- that such salesman, partsman, or mechanic be "primarily engaged in selling or servicing" the vehicles set forth in the statute, and

- that such salesman, partsman, or mechanic's employer be a "nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers.[1]

Here, there is no question as to the third element.  Defendants agree, and the facts before the court are clear, that Gabrielli is primarily engaged in the sale of trucks to ultimate purchasers. As to the first element, the court looks first to the regulation promulgated pursuant to the FLSA as an aid in defining the term "partsman."  Not surprisingly, that regulation defines the term to describe "any employee employed for the purpose of and primarily engaged in requisitioning, stocking, and dispensing parts."  29 C.F.R. §779.372(c)(2).  The court has little difficulty concluding that the duties performed by both McBeth at all times, and Cascone when he was a

---

[1]        Defendants' argument appears to collapse the first two statutory criteria, arguing that all "partsmen" are within the exemption, without regard as to how these individuals spend their time.

7

driver, bring both of these Gabrielli employees within the statutory definition of "partsmen."

Classifying both Plaintiffs as partsmen, however, does not end the inquiry. The statutory exemption applies only to partsmen "primarily engaged in selling or servicing" trucks. 29 U.S.C. §213(b)(10)(A). As to the term "primarily engaged," the relevant regulation applies a common-sense definition. It states that for a partsmen, salesman or mechanic to be "primarily engaged" in the sale or service of trucks, "the major part or over 50 percent of the [employee's] time must be spent in selling or servicing enumerated vehicles." 29 C.F.R. §779.372(d).

The court's findings regarding the Plaintiffs' duties leads the court to conclude that it is abundantly clear that neither Plaintiff made any sales of trucks to consumers. Indeed, neither was ever involved directly in the sale of a truck to a consumer, but dealt only with parts. Thus, Plaintiffs cannot be characterized as partsmen "primarily engaged in selling" trucks. As to service, however, a closer question is presented.

Certainly, Plaintiffs were, in some broad sense, involved in the Gabrielli service operation. Indeed, their work was important to the mechanics' servicing duties. As partsmen, however, Plaintiffs did not actually work on vehicles. Instead, they filled orders placed by on site service personnel, or by consumers. Defendants argue that to apply the statutory exemption only to "partsmen" who actually work on vehicles would be to define these individuals as mechanics, and thereby render the statutory use of the label "partsmen," superfluous. Still, the requirement that partsmen be "primarily engaged" in the "service" of vehicles suggests that there are partsmen who may not be so engaged. Accordingly, the court construes the statute to refer and distinguish between partsmen who are primarily engaged in the service of vehicles, and those who are not. It is only the former who are covered by the statutory exemption.

8

Discernment of the group to which Plaintiffs here belong is assisted by examining the legislative intent of the exemption. The 1966 Congressional debate on this exemption makes clear that it was the intent of Congress to exempt from overtime compensation those dealership employees who worked irregular and/or seasonal hours and/or were paid on a commission basis. Thus, the testimony recorded in the Congressional Record reflects the following discourse between Representatives Bell of California, and Andrews of North Dakota:

[Mr. Bell]    I want to make absolutely clear the intent of Congress as far as the application of this act to automobile dealers, <u>and commission employees such as salesmen, mechanics, and partsmen</u> who work for automobile dealerships. <u>The need for an exemption from overtime as to salesmen, mechanics, and parts men would arise out of the traditional commission pay basis for these employees.</u> It is impossible to successfully work these employees on a schedule basis because their ability to earn commissions depends on their availability when sales can be made or repairs are needed. In other words, the employer has no control over the customers' needs and cannot anticipate and schedule working hours as in most other industries.

112 Cong. Rec. 11289 (1966) (emphasis added).

Representative Andrews of North Dakota makes the following statement on the record, to ensure that the exemption being debated would apply to commissioned employees, stating:

I want to make sure that the intent of Congress is that those who are primarily retail dealers engaged in selling Ford and Chevrolet automobiles have this exemption for their commission employees <u>such as parts men and salesmen and mechanics.</u>

112 Cong. Rec. 11290 (1966) (emphasis added).

The chairman of the subcommittee responds in the affirmative. <u>Id</u>.

The legislative history cited by Defendants, while not as strong, is not to the contrary. Specifically, Defendants rely on Congressional discussion with regard to partsmen employed by farm implement dealers. It was noted that such employees, who were at their busiest during

9

"planting, harvesting and cultivating" seasons might be called upon at "at any time during the day or evening and on weekends." The irregular and seasonal nature of hours kept by such workers, and the concomitant difficulty of keeping such workers on a regular schedule made it impracticable to keep them on a time clock, and to "equitably" compute overtime compensation. 112 Cong. Rec. 20502 (1966). Additionally, it was further noted by Congress that partsmen working in the farm equipment business were frequently reimbursed on a "salary plus commission or bonus basis." Thus, it was understood that such irregularly employed workers who were paid at least in part, by commission or bonus, would be covered by the partsmen exemption to the overtime requirement of the FLSA.

Consideration of legislative intent, as described above, along with the directive that FLSA exemptions be narrowly construed, leads the court to conclude that while the type of work performed by the Plaintiffs can fall within a broad definition of the term, "partsmen," their jobs were not the type of work intended to be exempted from the overtime provision of the FLSA. While there is little case law on point, the court finds support in an analogous decision of the Fifth Circuit Court of Appeals in Brennan v. Deel Motors, Inc., 475 F.2d 1095 (5th Cir. 1973). There, the court held that the plaintiff service salesmen were within FLSA exemption primarily because, unlike Plaintiffs here, the employees at issue in Deel Motors, were paid substantially on a commission basis, and their hours might "be irregular depending on the special needs of their customers." Deel Motors, Inc., 475 F.2d at 1097-98; see also Dayton v. Coral Oldsmobile, 684 F. Supp. 290, 292 (S.D. Fl.1988) (holding partsman paid on a salary plus commission basis to be within FLSA exemption).

While the case is close, the court is swayed by the facts that Plaintiffs worked regular

10

hours, and were not paid on a commission basis. While there was testimony indicating that Plaintiffs received some marginal incentive pay, such pay did not constitute the bulk of Plaintiffs' compensation, and does not appear to be tied to Plaintiffs' job performance. In sum, recognizing that there exist "partsmen" who are not covered by the FLSA exemption, Plaintiffs' duties and compensation structure, and the narrow construction required of FLSA exemptions, leads the court to hold that Defendants have not sustained their burden of showing that the statutory overtime exemption contained in 29 U.S.C. §213(b)(10)(A), applies to Plaintiffs.

For the foregoing reasons, the court denies the motion for summary judgment dismissing Plaintiffs' claims pursuant to the partsmen exemption from the FLSA. The court turns next to consider whether Plaintiffs are exempt from overtime compensation pursuant to the motor carrier exemption.

III.   Motor Carrier Exemption

The Motor Carrier Act ("MCA"), passed prior to the FLSA, was enacted to promote efficiency and safety in the motor transport industry. Bilyou, 300 F.3d at 222 n.2; Khan v. IBI Armored Services, Inc., 474 F. Supp.2d 448, 450-51 (E.D.N.Y. 2007). Masson v. Ecolab, Inc., 2005 WL 2000133 *5 (S.D.N.Y. 2005). The MCA provides for federal regulatory authority with respect to "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. 31502((b)(2). To avoid overlapping rules, the FLSA contains an exemption for those employees whose hours are regulated by the MCA. See 29 U.S.C. §213(b)(1). That exemption provides that FLSA overtime provisions do not apply with respect to "(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours

11

of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1).[2]
When determining whether the motor carrier exemption applies, the issue is not whether the
federal agency has exercised its authority, but whether it has the power to do so. Martin v. Coyne
Intern. Enterprises, Corp., 966 F.2d 61, 62 (2d Cir. 1992); Khan, 474 F. Supp.2d at 451. The
Department of Labor interprets the motor carrier exemption to apply to drivers, driver's helpers,
loaders, or mechanics whose work directly affects the safety of operation of vehicles on the
public highways in transportation in interstate or foreign commerce within the meaning of the
MCA. 29 C.F.R. § 782.2(b)(2)(i)(ii); 29 C.F.R. § 782.5.

At the outset, the court notes that the parties are in agreement that when Plaintiff Cascone
acted as a driver for Gabrielli, his duties fell within the statutory exemption. Accordingly,
Plaintiffs do not claim overtime compensation in connection with the hours so worked. With
respect to hours worked as partsmen, however, Defendants claim that the motor carrier exception
applies because Plaintiffs are properly characterized as "loaders." Specifically, Defendants argue
that McBeth worked as a loader at the front counter, and Cascone worked as a loader when
employed by Gabrielli as a warehouse partsmen. In support of their argument, Defendants rely
on the relevant regulation which identifies a loader, within the meaning of the MCA as "an
employee of a carrier . . . whose duties include, among other things, the proper loading of his
employer's motor vehicles so that they may be safely operated on the highways of the country."
29 C.F.R. §782.5.

While the court acknowledges that both McBeth and Cascone testified as to occasionally

_____

[2]    When the MCA was first enacted, the duties of the Department of Transportation
were the duties of the Interstate Commerce Commission.

loading parts as a courtesy to customers, the court holds that the evidence presented is insufficient to bring their jobs within the "loader" category of workers. Important to this conclusion is the regulatory definition of "loader," and cases of the United States Supreme Court from which relevant regulations are derived. Specifically, the court notes that only those "loaders" who are involved in the safe operation of the vehicle being loaded are covered by the MCA. See Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 706, 707-08. (1947); Khan, 474 F. Supp.2d at 452; Masson, 2005 WL 2000133 *7. Thus, the regulation states that an employee engages in the responsibility of a loader when his work directly affects the vehicles' "safety of operation." See 29 C.F.R. §782.5(a). Such work occurs if the loader "has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." 29 C.F.R. §782.5 (c).

In further recognition of the decision of the Supreme Court in Pyramid Motor Freight, the regulation excludes employees involved in the:

> mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual, or occasional a part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of "loading" which directly affects "safety of operation."

29 C.F.R.§ 782.5(c)(emphasis added), quoting, Pyramid Motor Freight, 330 U.S. at 708.

Defendants seize upon deposition testimony wherein McBeth agrees that "it would not be smart," "to load all heavy things on one side and all light things on the other" and agreed that he would try to "distribute the weight so that the vehicle would be balanced." Agreement to such

13

common sense statements is insufficient to carry the burden of establishing that Plaintiffs were loaders within the meaning of the motor carrier exemption from the FLSA. On the contrary, the court holds that consideration of the Plaintiffs' duties established that to the extent that either was involved in the loading of parts, such activities were nothing more than a " trivial, casual, or occasional a part" of their activities, so that neither could be properly categorized as loaders who are not entitled to the protection of the FLSA. The court therefore denies Defendants' motion for summary judgment with respect to the motor carrier exemption of the FLSA.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied. Counsel are to inform the court of the status of this matter within three weeks of the date of this order.

SO ORDERED

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
November  1 , 2010