UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

KHALID McBETH and CARMINE CASCONE,
individually and on behalf of all other persons
similarly situated who were employed by
GABRIELLI TRUCK SALES, LTD.; GABRIELLI
TRUCK SALES OF CONNECTICUT, L.L.C.;
GABRIELLI TRUCK SERVICE, INC.; and
GABRIELLI FORD TRUCK SALES & SERVICE
INC.; and/or any other entities affiliated with or
controlled by GABRIELLI TRUCK SALES, LTD.;
GABRIELLI TRUCK SALES OF
CONNECTICUT, L.L.C.; GABRIELLI TRUCK
SERVICE, INC.; GABRIELLI FORD TRUCK
SALES & SERVICE INC.; ARMANDO
GABRIELLI, and/or AMEDEO GABRIELLI,

       Plaintiffs,

       -against-

GABRIELLI TRUCK SALES, LTD.; GABRIELLI
TRUCK SALES OF CONNECTICUT, L.L.C.;
GABRIELLI TRUCK SERVICE, INC.; and
GABRIELLI FORD TRUCK SALES & SERVICE
INC.; ARMANDO GABRIELLI, AMEDEOA
GABRIELLI, and/or any other entities affiliated
with or controlled by GABRIELLI TRUCK
SALES, LTD.; GABRIELLI TRUCK SALES OF
CONNECTICUT, L.L.C.; GABRIELLI TRUCK
SERVICE, INC.; GABRIELLI FORD TRUCK
SALES & SERVICE INC.; ARMANDO
GABRIELLI, and/or AMEDEO GABRIELLI,

       Defendants.

-------------------------------------------------------------X

Civ. No.:  CV 09 4112

Wexler, J.
Boyle, M.J.

**ORAL ARGUMENT
REQUESTED**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
RECONSIDERATION OF THE COURT'S NOVEMBER 1, 2010 ORDER OR,
ALTERNATIVELY, FOR CERTIFICATION FOR INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(b) AND STAY OF PROCEEDINGS PENDING APPEAL**

JACKSON LEWIS LLP
58 South Service Road, Suite 410
Melville, New York  11747
(631) 247-0404
*ATTORNEYS FOR DEFENDANTS*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................ 3

I.      Background ............................................................................................................. 3

II.     The Court Should Reconsider its November 1, 2010 Order Because It Incorrectly
Held Partsmen Must Perform Mechanical Repairs (the Duties of a Mechanic) In
Order for the § 213(b)(10) Exemption to Apply ........................................................... 6

        A.     Standard Governing Motions to Reconsider ....................................................... 6

        B.     The Court's Order Conflicts with Decisions from the Fourth, Fifth, and
Sixth Circuits Which All Hold Employees Do Not Need to Perform
Mechanical Repairs to be Engaged In "Servicing" Under the §213(b)(10)
Exemption ....................................................................................................... 6

        C.     The Court's Order Creating Two Groups of Partsmen—Those Who
Perform Mechanical Repairs (Which the Court Holds Are Exempt); and
Those Who Do Not Perform Mechanical Repairs (Which the Court
Holds are Non-Exempt)—Is Contrary to the Statutory Language,
Department of Labor Regulations, Caselaw, and Legislative History .............. 9

III.    The Court Incorrectly Relied on Plaintiffs' Method of Compensation and
Regularity of Hours In Analyzing and Applying the Exemption ................................... 12

IV.    The Court Did Not Address the Applicability of The Motor Carrier Exemption
To Plaintiff Cascone Based on His Duties As A "Driver" When He Worked As A
Warehouse Partsman ............................................................................................... 17

V.     If The Court Denies Defendants' Motion For Reconsideration as to the
213(b)(10) Exemption, the Case Should Be Certified for an Interlocutory .................... 19

        A.     The Order Involves a Controlling Question of Law ........................................... 19

        B.     There is Substantial Ground for Difference of Opinion on the Controlling
Question of Law ............................................................................................... 20

        C.     An Immediate Appeal from the Order Will Materially Advance the
Ultimate Termination of the Litigation ............................................................. 21

        D.     The Court Should Stay Further Proceedings Pending the Appeal ...................... 22

CONCLUSION ..................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Arciniaga v. General Motors Corp.*,
    460 F. 3d 231 (2d Cir. 2006) ....................................................................................*16*

*Badgett v. Rent-Way, Inc.*,
    350 F. Supp. 2d 642 (W.D. Pa. 2004) ............................................................................17

*Baumgarten v. The County of Suffolk*,
    2010 U.S. Dist. LEXIS 111083 (E.D.N.Y. October 15, 2010) ...................................19, 20

*Benedict v. Town of Newburgh*,
    95 F. Supp. 2d 136 (S.D.N.Y. 2000) ..............................................................................22

*Brennan v. Deel Motors, Inc.*,
    475 F.2d 1095 (5th Cir. 1973) ..........................................................................................6

*Brennan v. North Bros. Ford, Inc.*,
    1975 U.S. Dist. LEXIS 12815 (E.D. Mich. Apr. 17, 1975) ...............................................9

*Brennan v. Import Volkswagen, Inc.*,
    1975 U.S. Dist. LEXIS 15648 (D. Kan. 1975) ................................................................14

*Conn. ex rel Blumenthal v. U.S. Department of Interior*,
    228 F.3d 82 (2d Cir. 2000) .............................................................................................11

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249, 253-54 .....................................................................................................17

*Dayton v. Coral Oldsmobile*,
    684 F. Supp. 290 (S.D. Fla. 1988) ......................................................................6, 7, 8, 12

*Dunlop v. North Brothers Ford, Inc.*,
    529 F.2d 524 (6th Cir. 1976) ............................................................................................9

*Elliot v. Dave Ernstes & Sons Trucking*,
    2006 U.S. Dist. LEXIS 72278 (S.D. Ind. 2006) .........................................................17, 18

*Gildernew v. Quarantillo*,
    594 F.3d 131 (2d Cir. 2010).............................................................................................16

*Goldberg v. UBS AG*,
    690 F. Supp. 2d 92 (E.D.N.Y. 2010) ................................................................................6

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,*
    921 F.2d 21 (2d Cir. 1990)........................................................................19

*Koehler v. Bank of Bermuda, Ltd.,*
    101 F.3d 863 (2d Cir. 1996)......................................................................21

*Kuklachev v. Gelfman,*
    2009 U.S. Dist. LEXIS 29429 (E.D.N.Y. Apr. 7, 2009) .....................................6

*Lee v. Coughlin,*
    26 F. Supp. 2d 615 (S.D.N.Y. 1998)............................................................22

*In re Lloyd's America Trust Fund Litigation,*
    1997 U.S. Dist. LEXIS 11937 (S.D.N.Y. Aug. 12, 1997)..................................20

*Maestri v. Weslake Excavating Co., Inc.,*
    894 F. Supp. 573 (N.D.N.Y. 1995)..............................................................22

*Marshall v. Champion Cycle Center, Inc.,*
    443 F. Supp. 406 (N.D. Ill. 1978) ...............................................................15

*Mendez v. Holder,*
    566 F.3d 316 (2d Cir. 2009) ......................................................................14

*Phillip v. University of Rochester,*
    316 F.3d 291 (2d Cir. 2003).......................................................................16

*Phillips v. Lesco Logistics,*
    2007 U.S. Dist. LEXIS 40696 (S.D. Tex. June 5, 2007) ...................................18

*Russello v. United States,*
    464 U.S. 16 (1983)..................................................................................14

*Skylon Corp. v. Guilford Mills, Inc.,*
    901 F. Supp. 711 (S.D.N.Y. 1995) .............................................................20

*Songer v. Dillon Resource, Inc.,*
    618 F.3d 467 (5th Cir., September 3, 2010) ...................................................18

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001)..................................................................................11

*T.Z. v. City of New York,*
    634 F. Supp. 2d 263 (E.D.N.Y. 2009) *citing* <u>O'Brien v. Board of Education</u>, 127 F. Supp. 2d 342 (E.D.N.Y.2001) ................................................................6

*Trans-Pro Logistic Inc. v. Coby Electronics Corp.,*
    2010 U.S. Dist. LEXIS 109902 (E.D.N.Y. Oct. 15, 2010) ..................................................6

*Walton v. Greenbrier Ford, Inc.,*
    370 F.3d 446 (4th Cir. 2004) ...........................................................................................8

*In re WorldCom, Inc.,*
    2003 U.S. Dist. LEXIS 11160 (S.D.N.Y. June 30, 2003) ................................................20

## FEDERAL STATUTES

29 U.S.C. 207(i) ...............................................................................................................13

29 U.S.C. § 213(b)(10) ................................................................................................3, 4, 8

29 U.S.C. § 255 ..................................................................................................................3

49 U.S.C. §304 .................................................................................................................17

Fair Labor Standards Act, 29 U.S.C. § 201 et seq ...........................................................3

## REGULATIONS & RULES

29 C.F.R. § 779.372(c)(2) .........................................................................................1, 2, 10

29 C.F.R. §779.415-18 .....................................................................................................13

Fed. R. Civ. P. 23(f) .........................................................................................................21

Fed. R. Civ. P. 59(e) ..........................................................................................................6

E.D.N.Y. Civ. R. 6.3 ..........................................................................................................6

## OTHER AUTHORITY

112 Cong. Rec. 20504 ......................................................................................................15

DOT Policy Statement, 46 Fed. Reg. 37,902 (July 23, 1981) ........................................17

H. Rep. No. 1366 (1966) ..................................................................................................11

John M. Walker, Jr., *Judicial Tendencies in Statutory Construction: Differing View on*
*the Role of the Judge*, 58 N.Y.U. Ann. Surv. Am. L. 203, 233 ......................................16

S. Rep. No. 89-1487 (1966) .............................................................................................11

iv

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Rules, Defendants submit this memorandum of law in support of their motion for reconsideration of the Court's November 1, 2010 Order ("Order"), or in the alternative, for certification of the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and a stay of the further proceedings pending the appeal.

## PRELIMINARY STATEMENT

The Court's November 1, 2010 Order, if uncorrected, would result in elimination of the overtime exemption for partsmen that the automobile and truck dealership industry has relied upon for over 40 years. The Court held partsmen are not covered by the exemption unless they are "primarily engaged" in performing mechanical repairs. But performing mechanical repairs are the duties of mechanics, not partsmen, both of which are covered *separately* by the exemption.

The Court's Order makes it impossible for *any* partsman to be covered by the exemption. Specifically, under the Order, an employee must: (1) be a "partsman" as defined by the DOL regulations—*i.e.*, be "primarily engaged" in requisitioning, stocking and dispensing parts;[1] and, (2) be "primarily engaged" in performing mechanical repairs.[2] But an employee who meets the first requirement cannot *also* meet the second. They cannot be "primarily engaged" in two competing activities. In effect, the Court established concurrent requirements that can never be met. In so doing, the Order eliminates partsmen from the exemption entirely.

---

[1] 29 C.F.R. § 779.372(c)(2).
[2] "Primarily engaged" means more than 50% of their time. *See* 29 C.F.R. § 779.372(d).

1

Uncorrected, the Court's Order would be the first to ever hold partsmen must be primarily engaged in performing mechanical repairs to be covered by the exemption. In so doing, the Order would be in conflict with decisions from the Fourth, Fifth, and Sixth Circuits, and as well as other district court opinions interpreting the statute.

The Order would open the floodgates to wage and hour lawsuits against automobile dealers in New York and elsewhere, resulting in hundreds of millions of dollars of liability for the industry, and a windfall to Plaintiffs in this case, who were already paid a salary covering all hours of work, well above the national average. McBeth, for example, was earning $52,000 a year when his employment ended, while the national average for partsmen is $35,390. *See* U.S. Dep't of Labor, Bureau of Labor Statistics, Occupational Employment and Wages, May 2009, 41-2022 Parts Salespersons, http://www.bls.gov/oes/current/oes412022.htm, visited November 12, 2010. There are over 51,000 partsmen employed by dealerships in the United States. *Id.* These dealerships have been struggling from the near collapse of the automotive industry and many have already gone out of business. This decision, creating unexpected and unwarranted liability, would simply put many of them out of business.

Accordingly, and with great respect, we request the Court to reconsider its November 1, 2010 Order, or in the alternative, certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stay further proceedings pending the appeal.

2

# ARGUMENT

## I.      Background

Plaintiffs are former employees of Defendants who allege they were denied overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and New York Labor Law ("Labor Law"). *See* Dkt. No. 16. The Complaint is brought as a collective action under the FLSA and a class action under the Labor Law. They seek to represent all employees who were employed in similar positions. The statute of limitation under the FLSA is two years, which could be extended to three years for willful violations. *See* 29 U.S.C. § 255. The statute of limitation under New York Labor Law is six years. *See* N.Y. Labor Law § 198(3). Thus, Plaintiffs seek overtime payments on behalf of themselves and others during a six year period.

In the Answer to the Complaint, Defendants asserted Plaintiffs were not entitled to overtime under the FLSA and Labor Law because they were exempt under the truck dealership exemption, 29 U.S.C. § 213(b)(10), and the motor carrier exemption. On July 30, 2010, Defendants moved for summary judgment pursuant to each of these exemptions. On November 1, 2010, the Court issued its Order denying Defendants' motion for summary judgment as to both exemptions.

The Court held that under the 213(b)(10) exemption, three requirements must be satisfied for the exemption to apply:

1.   The employee must be either a salesman, partsman, or mechanic;

2.   The salesman, partsman, or mechanic's employer must be a "nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers;"

3

3.  The salesman, partsman, or mechanic must be "primarily engaged in selling or servicing" the vehicles set forth in the statute [automobiles, trucks, or farm implements].

Order, p. 7.  The parties stipulated that the second requirement was satisfied and the Court correctly found the first requirement was met.  Order at 7.  ("The court has little difficulty concluding that the duties performed by both McBeth at all times, and Cascone when he was a driver,[3] bring both of these Gabrielli employees within the statutory definition of 'partsmen'").

As to the third requirement, the Court found it presented a "closer question." *Id.* at 8.  The Court held that while Plaintiffs *were* in the broad sense of the term "involved in the Gabrielli service operation," to be primarily engaged in "service" for purposes of the exemption, they had to spend 50% of more of their time "work[ing] on vehicles," *i.e.,* performing mechanical repairs. *Id.*  The central holding of the Court is that partsmen must work on the vehicles to be covered.  Defendants respectfully ask the Court to reconsider this holding.  This holding appears on page 8 of the Order, which we repeat here in full:

Certainly, Plaintiffs were, in some broad sense, involved in the Gabrielli service operation. Indeed, their work was important to the mechanics' servicing duties. As partsmen, however, Plaintiffs did not actually work on vehicles. Instead, they filled orders placed by on site service personnel, or by consumers. Defendants argue that to apply the statutory exemption only to "partsmen" who actually work on vehicles would be to define these individuals as mechanics, and thereby render the statutory use of the label "partsmen," superfluous. Still, the requirement that partsmen

---

[3] This is a typographical error.  It should read "when Cascone was a *warehouse partsmen*", (not driver). Defendants did not argue Cascone was exempt under § 213(b)(10) when he was a driver; Defendants argued that he was exempt under 213(b)(10) when he was a warehouse partsmen, to which the Court clearly is referring.  Cascone worked as a full time driver during his first two years of employment and then later as a warehouse partsman.  We respectfully request that the Court correct this typographical error.

> be "primarily engaged" in the "service" of vehicles suggests that there are partsmen who may not be so engaged. Accordingly, the court construes the statute to refer and distinguish between partsmen who are primarily engaged in the service of vehicles, and those who are not. It is only the former who are covered by the statutory exemption.

The Court created two subcategories of partsmen: (1) partsmen who are primarily engaged in performing mechanical repairs (whom the Court held were exempt); and (2) partsmen who are not primarily engaged in performing mechanical repairs (whom the Court held were nonexempt). The Court cited no factual authority indicating that these two groups of partsmen exist. Indeed, as explained below, these subcategories do not exist. Partsmen do not work on vehicles; that is the job of a mechanic.

Having created two subcategories of "partsmen," the Court then attempted to "discern[]" into which group the Plaintiffs belonged. In deciding which group to place them, the Court was "swayed" by the fact that Plaintiffs did not work irregular hours and were not paid on a commission basis. Order at 10-11. But as discussed below, these requirements are not in the statute or regulations, and no case has ever held either is required for the exemption to apply. Further, the legislative history demonstrates that the commission basis of payment and irregularity of hours were not the only reasons for the exemption, and the exemption had just as much to do with issues of fairness. Salesmen, partsmen, and mechanics were viewed as one team and it was viewed an inequitable to treat them differently.

5

II.     **The Court Should Reconsider its November 1, 2010 Order Because It Incorrectly Held Partsmen Must Perform Mechanical Repairs (the Duties of a Mechanic) In Order for the § 213(b)(10) Exemption to Apply**

        *A.      Standard Governing Motions to Reconsider*

A motion for reconsideration may be granted where the court overlooked controlling decisions; the court misinterpreted or misapplied relevant case law; or the court's decision is ambiguous. *See T.Z. v. City of New York*, 634 F. Supp. 2d 263, 267-8 (E.D.N.Y. 2009) citing *O'Brien v. Bd. of Educ. of Deer Park Union Free School Dist.*, 127 F. Supp. 2d 342, 346 (E.D.N.Y. 2001); *Trans-Pro Logistic Inc. v. Coby Elec. Corp.*, 2010 U.S. Dist. Lexis 109902 (E.D.N.Y. Oct. 15, 2010); *see also Kuklachev v. Gelfman*, 2009 U.S. Dist. LEXIS 29429 at *8 (E.D.N.Y. Apr. 7, 2009); *Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 95 (E.D.N.Y. 2010); Fed. R. Civ. P. 59(e); E.D.N.Y. Civ. R. 6.3.   Reconsideration is also proper to correct clear error or prevent manifest injustice. *See Goldberg*, 690 F. Supp. 2d at 96.  We believe the Court misinterpreted and misapplied relevant decisions, the statutory text, and the Department of Labor regulations.

        *B.      The Court's Order Conflicts with Decisions from the Fourth, Fifth, and Sixth Circuits Which All Hold that Employees Do Not Need to Perform Mechanical Repairs to be Engaged In "Servicing" Under the § 213(b)(10) Exemption*

In support of its conclusion that "partsmen" must be primarily engaged in performing mechanical repairs to be covered by the exemption, the Court cited two cases: *Brennan v. Deel Motors, Inc.*, 475 F. 2d 1095 (5th Cir. 1973), and *Dayton v. Coral Oldsmobile*, 684 F. Supp. 290 (S.D. Fla. 1988).  But neither case stands for this proposition; both support precisely the opposite. *Deel Motors* involved whether the § 213(b)(10) exemption applied to employees variously titled "service writers," "service advisors" and

6

"service salesmen." *Id.* at 1096.  None of their duties involved performing mechanical

repairs.  The Fifth Circuit described their duties as follows:

> These service salesmen work directly with customers
> coordinating the sale of numerous goods, services, and
> mechanical skills provided by the [dealership]. The service
> salesmen diagnose each customer's problem with his
> automobile and then refer the car to an appropriate
> department within [dealership's] business operation for
> needed repairs or additional equipment desired. They monitor
> the work while in progress, keeping track of the parts or
> additions used, and then determine whether a satisfactory job
> has been done.

*Id.*  In upholding applicability of the exemption, the Fifth Circuit held they were salesmen

primarily engaged in *servicing* vehicles.  In fact, the Court held the service writers were

functionally similar to *partsmen*, whom, significantly, the Court described as *"service"*

employees:

> these service salesmen are functionally similar to the
> mechanics *and partsmen who service* the automobiles. All
> three work as an integrated unit, performing the *services*
> necessary for the maintenance of the customer's automobile.
> The mechanic and partsman provide a specialized *service*
> with the service salesman coordinating these specialties. Each
> of these *service employees* receive a substantial part of their
> remuneration from commissions and therefore are more
> concerned with their total work product than with the hours
> performed.

*Id.* at 1097 (last emphasis in <u>original</u>). The other case relied upon by the Court, *Dayton v.*

*Coral Oldsmobile*, 684 F. Supp. 290 (S.D. Fla. 1988), also conflicts with the Court's Order.

There, the Court granted summary judgment to a dealership in a case brought by a partsman

who also was not involved in mechanical repairs.  The Plaintiff in *Dayton* was responsible

for selling parts, taking orders over the phone from wholesale accounts, taking care of

special orders, stocking them, handling the paperwork, shipping and receiving, and the

overall mechanics of the parts department. *Id.* at 292.  Plaintiff in *Dayton* performed substantially similar parts-related duties to the Plaintiffs here.  He did not perform mechanical repairs, and the Court held he was exempt.

Decisions from other Circuits similarly hold that the term "servicing" does not mean personally performing mechanical repairs.  In *Walton v. Greenbrier Ford, Inc.*, 370 F. 3d 446 (4th Cir. 2004),[4] a more recent case, the Fourth Circuit also held that "service advisors" were primarily engaged in "servicing" and exempt under § 213(b)(10).  This was true even though these "service advisors" did not perform any mechanical work:

> Walton began his employment as a "Service Advisor" managing the Quick Lane Department, which was a new quick service operation at the dealership. Walton was to greet customers, listen to their concerns about their cars, write repair orders, follow-up on repairs, and keep customers informed about maintenance. Walton would also suggest to customers additional services that needed to be preformed and would prepare work orders.
>
> * * *
>
> [W]e conclude that as a salesman, Walton was primarily engaged in servicing automobiles. The facts make clear that Walton was an integral part of the dealership's servicing of automobiles. For example, the district court recognized that Walton had a "key role" in the dealership's service operations . . . Accordingly, we affirm the district court's grant of summary judgment on Walton's FLSA claim because he was, for the purposes of 29 U.S.C. § 213(b)(10)(A), a "salesman, partsman, or mechanic primarily engaged in ...servicing automobiles."

*Id.* at 449, 452-53.  Similarly, the Sixth Circuit also held that service writers who do not perform mechanical repairs are engaged in servicing automobiles within the meaning of

---

[4] Defendants cited *Greenbrier Ford* in their Memorandum of Law In Support of Their Motion for Summary Judgment.  Dkt. No. 45 at 6-7.

§213(b)(10), affirming the grant of summary judgment against a service writer based on application of the exemption. *See Dunlop v. North Bros. Ford, Inc.*, 529 F. 2d 524 (6th Cir. 1976), *affirming Brennan v. North Bros. Ford, Inc.*, 1975 U.S. Dist. LEXIS 12815 (E.D. Mich. Apr. 17, 1975).

In all three cases, service writers were held to be engaged in "servicing" under § 213(b) even though they did not perform any mechanical repairs. The Court's Order that partsmen were not engaged in service because they did not perform physical labor on the vehicle contradicts the Fourth, Fifth, and Sixth Circuit holdings. Indeed, it would be odd that a service writer or service advisor, a job not expressly identified in the statute, would be exempt, but a partsman, who is specifically identified, would not.

C.   *The Court's Order Creating Two Groups of Partsmen—Those Who Perform Mechanical Repairs (Which the Court Holds Are Exempt); and Those Who Do Not Perform Mechanical Repairs (Which the Court Holds are Non-Exempt)—Is Contrary to the Statutory Language, Department of Labor Regulations, Caselaw, and Legislative History*

Central to the Court's holding is the proposition that there are two groups of partmen: (1) partsmen who are primarily engaged in performing mechanical repairs (who the Court holds are exempt); and (2) partsmen who are not primarily engaged in performing mechanical repairs (who the Court holds are non-exempt). This construction is contrary to the statute, Department of Labor regulations, case law, the legislative history, and there is no support in the factual record presented to the Court (or in any outside source) that such subgroups of partsmen exist. The Court's creation of these two subgroups was in error.

First and foremost, requiring partsmen to perform the duties of a *mechanic* to be covered contradicts the language of Section 213(b)(10). Mechanics are listed separately and they perform different duties than a partsman. DOL regulations define a "mechanic",

9

for purposes of the 213(b)(10) exemption, as "any employee primarily engaged in doing mechanical work." 29 C.F.R. § 779.372(c)(3). This is the very definition the Court held a *partsman* must meet. Thus, only partsmen who satisfy the definition of a "*mechanic*" would be covered by the exemption. But if partsmen were required to perform the duties of "mechanics" to be covered, there would have been no reason to separately list partsmen in the statutory exemption. They would have been covered under the definition of "mechanics." The Court's interpretation of the statute makes its inclusion of partsmen superfluous. Congress could not have intended partsmen to be the same as mechanics; they are listed separately.

Second, it would be impossible under the Court's Order for *any* partsmen to be covered by the exemption. This is because, under the Court's Order, to be covered under the exemption, the partsman must satisfy *both* the DOL definition of a "partsman" *and* be "primarily engaged" in "servicing" *i.e.*, performing mechanical repairs. But this is impossible. DOL regulations define a "partsman" as an employee "primarily engaged in requisitioning, stocking, and dispensing parts," meaning they must spend more than 50% of their time performing these duties. 29 C.F.R. 779.372(c)(1). If they meet this test (the first part of the Court's three part test), they cannot *also* satisfy the Court's requirement that they be "primarily" engaged in performing mechanical repairs (the third part of the three part test) . They can only be "primarily engaged" in *one* of these functions.

Under the Court's Order, employees who meet the DOL definition of a "partsman" never could be exempt under the Court's Order because by satisfying the DOL definition, they have automatically exclude themselves from the Court's requirement that they be primarily engaged in performing mechanical repairs. Likewise, employees who satisfy the

Court's requirement of being primarily engaged in performing mechanical repairs could not also satisfy the definition of "partsman" because they would not, by definition, spend more than 50% of their time engaged in requisitioning, stocking, and dispensing parts. Thus, the Court's construction would exclude *all* partsmen from the 213(b)(10) exemption. No partsman could satisfy both tests, violating principles of statutory construction by rendering the inclusion of partsmen superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *Conn. ex rel Blumenthal v. U.S. Dep't of Interior*, 228 F.3d 82, 88 (2d Cir. 2000) ("[W]e are required to 'disfavor interpretations of statutes that render language superfluous'").

Third, nowhere in the legislative history discussing the exemption is there *any* discussion that partsmen must perform mechanical repairs—the duties of a mechanic—to be covered. There is nothing in the House Report, the Senate Report, or the Congressional Record that supports this conclusion. *See* H. Rep. No. 1366 (1966); S. Rep. No. 89-1487 (1966). Instead, the legislative history demonstrates that partsmen must perform the duties of *partsmen*:

> Perhaps it would be helpful to make clear the type of work performed by the partsman and the effect which the proposed change might have on various business establishments. The partsman classifies shelves and dispenses parts used by mechanics and sold to customers who come into establishments to make purchases.

112 Cong Record 20502, August 24, 1966. Congress has long understood the kind of work partsmen do, and it does not involve personally performing mechanical repairs. The construction consistent with the statutory language, regulations, and legislative history is that duties that partsmen such as Plaintiffs perform—requisitioning, stocking, and dispensing parts—*are* service duties.

11

In the Order, the Court wrote that Defendants "appear to collapse the first two statutory criteria, arguing that all 'partsmen' are within the exemption, without regard as to how these individuals spent their time." Order at 7, n.1. But Defendants do not argue that the exemption applies without regard to their duties. The definitions of "salesman," "partsmen," or "mechanic" require, as condition of satisfying the respective *definitions*, that individuals perform certain *duties* and that these duties constitute their "primary" responsibility. Thus, Defendants have argued the exemption *does* depend on how the employees spend their time, and the percentage of their time spent on the duties applicable to them. This is how the DOL regulations incorporate the statutory requirement that the employees be "primarily engaged in selling or servicing" a vehicle. The limitation that employees be "primarily engaged" in the selling or servicing of vehicles simply ensures that an individual who is working as a mechanic, salesmen or partsmen does so on a regular basis (more than 50% of the time) and prevents the exemption from being expanded to those who perform these functions only sporadically—*i.e.*, less than 50% of the time. *See e.g., Dayton*, 684 F. Supp. at 291-2 (examining the percentage of time plaintiff, a partsman, spent performing exempt and non-exempt work in applying he exemption). For example, an individual hired as a partsman, but spending more than 50% of his time sweeping the floor, would not be exempt.

### III.    The Court Incorrectly Relied on Plaintiffs' Method of Compensation and Regularity of Hours In Analyzing and Applying the Exemption

After creating two new subcategories of "partsmen," the Court then attempted to "discern[]" to which group the Plaintiffs belonged. As discussed above, it was incorrect to

subdivide partsmen into these two groups in the first place, and therefore incorrect to try to assign them to one of the subgroups.

However, in choosing into which subgroup they fit, the Court stated it was "swayed" by the fact that Plaintiffs' hours were regular and that commissions did not constitute a "bulk of Plaintiffs' compensation."[5]  Order p. 10-11.  It was error to permit these facts to "sway" the Court's decision because there is no requirement in the statute, the DOL regulations, or in any case addressing the exemption that an individual must receive the "bulk" of their compensation (or any of their compensation) from commissions, *or* that they work irregular hours.

The partsmen exemption is in contrast to other exemptions, which *do* have a commission requirement and *detailed* regulations governing what constitutes a commission and how to calculate it.  *See e.g.*, 29 U.S.C. 207(i) ("7(i) exemption"); 29 C.F.R. §§ 779.415-18.  If Plaintiffs earned the "bulk" of compensation from commissions, they would have been exempt under the 7(i) exemption, which applies to employees who earn more than 50% of their compensation from commissions and work in a retail or service establishment, like an automobile dealership.  Thus, imposing this commission requirement makes the 213(b)(10) exemption redundant.  The commission requirement set by the Court is the requirement contained in separate exemption, the 7(i) exemption.  There is no commission requirement in the 213(b)(10) exemption.

It is well established that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed

---

[5] The Court found the commission they did receive did not "appear to be tied to Plaintiff's job performance." Order p. 11. But this is not accurate.  Plaintiffs' incentive compensation was tied to the performance of the Parts Department, of which they were members, and thus to their own performance.

that Congress acts intentionally and purposely in the disparate inclusion or exclusion."
*Mendez v. Holder*, 566 F. 3d 316, 322 (2d Cir. 2009) (quoting *Russello v. United States*,
464 U.S. 16, 23 (1983)). The inclusion of a commission requirement in the 7(i) exemption,
and the absence of one in the 213(b)(10) exemption, demonstrates that if Congress intended
for 213(b)(1) to contain a commission requirement, it would have been specifically
identified.

Consistent with the statute being silent with respect to a commission requirement,
the DOL regulations also contain no discussion of a commission requirement. Surely, if a
commission was required for 213(b)(10), DOL regulations would at least mention it. We
are unaware of *any* opinion letters or *any* guidance provided by the DOL stating employees
must earn a commission for the exemption to apply. *See e.g.*, U.S. Dep't of Labor Op. Ltr.,
March 17, 2003, 2003 DOLWH LEXIS 2 (discussing 7(i) exemption and 213(b)(10)
exemption, and noting that 7(i) requires commissions, without mentioning any such
requirements for the 213(b)(10) exemption); *see also DOL Fact Sheet No. 11* (available at
http://www.dol.gov/whd/fact-sheets-index.htm, visited July 27, 2010) (no discussion of
commissions).

While we concede the legislative history does indicate the exemption was intended
by *some* members of Congress to apply to individuals who were paid commissions or bonus
and/or worked irregular hours, and that this has been noted in some of the cases, this
limitation is not contained in the statute or regulations, no case has ever identified it as a
requirement for the exemption to apply, and cases have applied the exemption to
individuals who did not earn *any* commissions. In *Brennan v. Import Volkswagen, Inc.*,
1975 U.S. Dist. LEXIS 15648 (D. Kan. Oct. 21, 1975), for example, the Court granted

14

summary judgment to eight employees who worked as service advisers for a car dealership including one that did not earn any commissions and was paid only a salary.

Moreover, the legislative history also suggests *other* purposes of the exemption, not simply to exempt those earning commissions or working irregular hours, including: profit levels of dealerships, the importance of the industry to the economy, and the equity of exempting some employees within a given industry or working unit, but not others. In *Marshall v. Champion Cycle Center, Inc.*, 443 F. Supp. 406 (N.D. Ill. 1978), a case involving the applicability of 213(b)(10), the Court noted just that:

> [I]n developing exemptions to the FLSA, Congress was concerned not with the use or nature of the products exempted, but with the structure of the particular industries involved. *The legislative history of these provisions shows that Congress considered profit levels, the types of workers involved, the importance of a given industry to the national and regional economies, and numerous other factors in determining which industries to exempt. Thus, it is not clear that the commission pay basis and unusual work schedules of some employees of automobile dealerships were the dispositive factors in the creation of this exemption.*

*Id.* at 407 (emphasis added).

The legislative history suggests that the inclusion of partsmen had just as much to do with issues of fairness than anything else. Specifically, some members of Congress thought it would be inequitable to treat partsmen different from mechanics and salesmen, since they all form part of the same team. *See e.g.*, 112 Cong. Rec. 20504 ("I see no reason why, after historically we have put them together, we now say, 'you are a mere partsman. You are going to be treated differently from the mechanic.' It seems to me, rather than treating them the same, we are treating the partsman different from the way he and the mechanics have been treated equally since we have had this legislation").

15

Finally, there are many reasons legislation is passed.  Sometimes those reasons are expressed, sometimes they are not.  Individual members of Congress may ultimately agree to include a portion of a bill with which they strongly disagree in order to obtain support for other provisions, which, on the whole, they feel are more important.  Concessions are part of the legislative process, which is why resorting to legislative history can be a murky and speculative process.  *See* John M. Walker, Jr., *Judicial Tendencies in Statutory Construction: Differing View on the Role of the Judge*, 58 N.Y.U. Ann. Surv. Am. L. 203, 233 ("Because of the problems associated with legislative history, including its unreliability, manipulability, and lack of authority as law, I have come to attached very little, or no, weight to it, both in deciding cases and in relying upon it in published opinions").  It is for this reasons that when statute is clear and unambiguous, as it is here, it is imprudent to rely on legislative history.  *See Gildernew v. Quarantillo*, 594 F. 3d 131, 134 (2d Cir. 2010) ("because the statute is clear and unambiguous, we will not endeavor to divine the intent of Congress by resort to legislative history"); *Phillip v. Univ. of Rochester*, 316 F. 3d 291, 297 (2d Cir. 2003) ("If a statute is clear on its face, a court is not permitted to use other interpretive tools, including legislative history, to discern the statute's meaning"); *Arciniaga v. General Motors Corp.*, 460 F. 3d 231 (2d Cir. 2006) ("We have stated time and again that courts must presume that a legislature says in a statute what It means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54). .

In sum, the Court erred first by dividing partsmen into two subgroups that do not exist and then placing Plaintiffs in the non-exempt subgroup because they did not earn a

16

substantial portion of their compensation in commissions and did not work irregular hours.
These requirements are not contained in the statute, regulations, and the legislative history
is speculative at best.  Accordingly, we respectfully request that the Court reconsider its
Order, and upon reconsideration, grant Defendants' motion for summary judgment.

## IV. The Court Did Not Address Applicability of The Motor Carrier Exemption To Plaintiff Cascone Based On His Duties As A "Driver" When He Worked As A Warehouse Partsman

Plaintiff Cascone's employment was divided into two distinct periods.  During the
first period, Plaintiff Cascone was employed as a full time driver.  During the second
period, he worked as a warehouse partsman, but continued to serve as a driver when other
drivers were sick, absent or on vacation.  There is no dispute that during the first period he
was exempt under the motor carrier exemption.  Order at 12.[6]  As to the second period, in
December 2009, parties entered into a stipulation governing the frequency with which any
plaintiff would need to drive a Gabrielli truck to be excluded from this case based on the
motor carrier exemption.  Plaintiffs agreed to remove from the class definition, "any
employees who operated vehicles exceeding 10,000 lbs. gross vehicle weight, for any
calendar quarter in which they operated such vehicles."  *See* Stipulation, ¶ 6 "so ordered"
December 22, 2009.[7]

---

[6] *See* Letter from Plaintiffs' Counsel, dated July 9, 2010 ("Cascone seeks overtime pay under the FLSA
solely for his time as a warehouse employee"), Dkt No. 40.

[7] An employee will be subject to the exemption for a four month period from the date of the interstate
travel, also known as the "4-month rule."  *See Elliot v. Dave Ernstes & Sons Trucking*, 2006 U.S. Dist.
LEXIS 72278, *17 (S.D. Ind. 2006); *Badgett v. Rent-Way, Inc.,* 350 F. Supp. 2d 642, 657 (W.D. Pa.
2004) (noting "The Department of Labor has accepted this 4-month rule"); DOT Policy Statement, 46
Fed. Reg. 37,902 (July 23, 1981) ("Evidence of driving in interstate commerce or being subject to being
used in interstate commerce should be accepted as proof that the driver is subject to 49 U.S.C. 304 for a
4-month period from the date of the proof").

Plaintiff Cascone testified that, during his time as a spare or replacement driver, he met the test set forth in the Stipulation. He did so, according to him, once or twice every two months. [DSOF ¶ 72].[8] This was confirmed by his manager, John Gugliermi, who estimated the frequency at approximately once per month. [DSOF ¶ 72]. Thus, all of Plaintiff Cascone's claims should have been dismissed pursuant to the parties' Stipulation. The Court did not address this point in the Order.

Second, even if the Stipulation did not exist or apply, undisputed evidence submitted on the Motion demonstrated that Plaintiff Cascone, as a spare driver, qualified for the motor carrier exemption because there was a reasonable probability that he could have been called upon to drive a commercial vehicle, which is sufficient to apply the exemption. *See Phillips v. Lesco Logistics*, 2007 U.S Dist. Lexis 40696 (S.D. Tex. June 5, 2007) ("The Department of Transportation has authority over drivers who regularly travel across state lines or who 'reasonably are expected to do interstate driving'"); *Elliot v. Dave Ernstes & Sons Trucking*, 2006 U.S. Dist. LEXIS 72278, *16 (S.D. Ind. Oct. 3, 2006). Recent cases decided after the parties briefed the issue, confirm this. *See Songer v. Dillon Res., Inc.*, 618 F.3d 467 (5th Cir. 2010) (applying the motor carrier exemption to individuals who reasonably could be expected to drive).

The Court's Order only addressed the applicability of the motor carrier exemption to McBeth and Cascone as it related to their duties as "loaders." It did not address the applicability of the exemption as to Cascone when he worked as a warehouse partsmen, but

---

[8] DSOF refers to the 56.1 Statement submitted by Defendants in support of their motion for summary judgment.

continued to drive when needed, or the effect of the parties' stipulation. Accordingly, we ask the Court to reconsider the Order as to this point.

V.    **If The Court Denies Defendants' Motion For Reconsideration as to the 213(b)(10) Exemption, the Case Should Be Certified For An Interlocutory Appeal**

If the Court denies Defendants' motion for reconsideration and Defendants' motion for summary judgment, Defendants respectfully request that the Court certify the November 1, 2010 Order for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Section 1292(b) provides that certification of an order for interlocutory appeal is appropriate:

> When a district judge . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . .

28 U.S.C. § 1292(b). Here, all three requirements are met.

A.    *The Order Involves a Controlling Question of Law*

A question of law is "controlling" if reversal of the district court's order would terminate the action. *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 921 F. 2d 21, 23-25 (2d Cir. 1990); *Baumgarten v. The County of Suffolk*, 2010 U.S. Dist. Lexis 111083, * 2 (E.D.N.Y. October 15, 2010). The question of law decided by the Court—whether partsmen must be "primarily engaged" in performing mechanical repairs to be covered by the 213(b)(10) exemption—is a controlling question of law because reversal of the decision will result in dismissal of the case. As the Court noted, the facts for purposes of Defendants' motion for summary judgment were undisputed, and the only question for the Court was one of law—

19

based on the duties performed by Plaintiffs were they "partsmen" primarily engaged in the selling or servicing of vehicles.  If the Second Circuit reverses the Court's decision, Plaintiffs would be exempt from receiving overtime, and the Complaint dismissed.

　　　　Under this first prong, the court also examines whether the question of law is a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Id.*  Here, the controlling question of law is narrow.  It involves only one question which could be answered quickly and cleanly after review of the record, which itself is not substantial.  Thus, the first prong is satisfied.

　　　　B.　　There is Substantial Ground for Difference of Opinion on the Controlling
　　　　　　　　Question of Law

　　　　Courts will find there are substantial grounds for difference of opinion where there is genuine doubt as to the correct legal standard to be applied.  *In re WorldCom, Inc.*, 2003 U.S. Dist. LEXIS 11160 (S.D.N.Y. June 30, 2003).  This can occur where there is conflicting authority on the issue, the issue is particularly difficult and of first impression for the Second Circuit, or where there is a "paucity of relevant cases."  *See In re Lloyd's Am. Trust Fund Litig.*, 1997 U.S. Dist. Lexis 11937 (S.D.N.Y. Aug. 12, 1997); *Skylon Corp. v. Guilford Mills, Inc.*, 901 F. Supp. 711, 718 (S.D.N.Y. 1995).  The Court's Order made clear that it was a "close" case.  As discussed previously, there is also substantial conflicting authority from the Fourth, Fifth, and Sixth Circuits, as well as district courts outside the Second Circuit.  Further, there is no controlling Second Circuit decisions and not a single decision from New York district courts applying the 213(b)(10) exemption.  Indeed, there have only been a couple of cases in the country applying the 213(b)(10) exemption to partsmen since the exemption was enacted over forty years ago, all of which

support Defendants.  Finally, the issue involves one of substantial importance to the automobile dealer industry which, if affirmed, would eliminate an exemption relied upon by the automobile industry for over 40 years and result in hundreds of millions of dollars of liability.  Given these facts, the Court should grant interlocutory appeal relief.

C.     *An Immediate Appeal from the Order Will Materially Advance the Ultimate Termination of the Litigation*

The use of § 1292(b) is reserved for cases where an intermediate appeal may avoid protracted litigation.  *Koehler v. Bank of Bermuda, Ltd.,* 101 F. 3d 863, 865-66 (2d Cir. 1996).  Here, the third prong is easily satisfied because if the Court's decision is reversed, the case will be dismissed.  Thus, both parties have a strong interest in having this controlling legal question answered.  Indeed, because the answer to the question resolves the case, the parties had agreed to stay discovery and a motion relating to class certification pending the Court's Order.  The same benefit applies to the appeal.  It would be a waste of judicial resources and the resources of the parties to brief motions for conditional certification under the FLSA and class certification under the Labor Law, potentially send notice to putative members of a class if certification was granted and then hold a trial when years later, the Second Circuit reverses the Court's decision.  Indeed, it is for this reason that class certification decisions are immediately appealable.  *See* Fed. R. Civ. P. 23(f). Since Defendants will agree to toll the statute of limitation during the pendency of the appeal, there is no prejudice to Plaintiffs by an interlocutory appeal.

D.      *The Court Should Stay the Proceedings Pending the Appeal*

Defendants respectfully request that the Court stay further proceedings in this matter if the Court certifies the Order for interlocutory appeal. A stay is appropriate because the determination of the appeal in Defendants' favor would result in dismissal of the lawsuit. Additionally, a stay is appropriate for all the reasons discussed above—it would be a waste of judicial resources and the parties' resources to brief certification motions, potentially send notice to putative class members, and begin deposing class members when the case could be dismissed on appeal as a matter of statutory interpretation. Courts granting Section 1292(b) motions for certification routinely grant such stays. *See e.g.*, *Benedict v. Town of Newburgh*, 95 F. Supp. 2d 136, 144 (S.D.N.Y. 2000); *Lee v. Coughlin*, 26 F. Supp.2d 615, 638 (S.D.N.Y. 1998); *Maestri v. Weslake Excavating Co., Inc.*, 894 F. Supp. 573, 579 (N.D.N.Y. 1995).

## CONCLUSION

We recognize that motions for reconsideration are to be used sparingly. But given (1) the importance of the legal issue presented both to the Defendants in this case and the entire automobile dealer industry (a decision that, if uncorrected, could result in hundreds of millions of dollars of liability affecting over 50,000 employees); (2) the Court's Order is the *only* case ever to hold a partsman must perform mechanical repairs to be covered by the exemption and is in conflict with the opinions of three Circuit Courts; (3) the Order would result in the elimination of an exemption that the industry has relied upon for 40 years; and (4) the omission of any ruling relating to the applicability of the motor carrier exemption when Plaintiff Cascone was a driver; Defendants respectfully request that the Court grant Defendants' motion, and upon reconsideration, grant summary judgment in favor of

Defendants.  In the alternative, Defendants request that that the Court certify the Order for

appeal and stay further proceedings.

Dated:  Melville, New York
       November 15, 2010

                           Respectfully submitted,

                           JACKSON LEWIS LLP
                           *ATTORNEYS FOR DEFENDANTS*
                           58 South Service Road, Suite 410
                           Melville, New York 11747
                           (631) 247-0404

By:                          
                         Jeffrey W. Brecher, Esq.
                         Paul J. Siegel, Esq.
                         Noel P. Tripp, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2010, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

MARC A. TENENBAUM, ESQ.
VIRGINIA & AMBINDER, LLP
*ATTORNEYS FOR PLAINTIFFS*
Trinity Centre
111 Broadway, Suite 1403
New York, New York  10006
mtenenbaum@vandallp.com

JEFFREY W. BRECHER

4831-0170-4456, v. 6

24